[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11016

_____

MARY E. HARRIS,

Plaintiff-Appellant,

*versus*

THE PUBLIC HEALTH TRUST OF MIAMI-DADE COUNTY,
d.b.a. Jackson Health System,
d.b.a. Jackson Memorial Hospital,
d.b.a. Jackson Hospital Ambulatory Clinic,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-25298-KMM

_____

Before JILL PRYOR, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Mary E. Harris—a black nurse who was disciplined and ultimately fired by her employer, Public Health Trust of Miami-Dade County—appeals the district court's entry of summary judgment on her Title VII and state-law claims alleging (1) employment discrimination, (2) hostile work environment, and (3) retaliation. Harris contends that the district court erred in rejecting all three claims. We disagree and affirm.

## I

First, a few basic facts:  Harris worked for Public Health Trust for ten years. For the first eight, she was at Jackson North Medical Center. After her position there was eliminated, she requested and received a transfer to Jackson Reeves Senior Health Center, but following a series of disciplinary actions, Public Health Trust fired her. Harris claims that she experienced discrimination at both locations and that her termination was based on her race.

## II

Having set the stage, we will consider Harris's employment-discrimination, hostile-work-environment, and retaliation claims in turn, canvassing additional facts as necessary.[1]

---

[1] We review the district court's grant of summary judgment de novo, "considering all of the evidence and the inferences it may yield in the light most favorable to" Harris as "the nonmoving party." *Ellis v. England*, 432 F.3d 1321, 1325–26 (11th Cir. 2005).

### A

Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act of 1992 both make it unlawful for a private employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of" her race or national origin. 42 U.S.C. § 2000e-2(a)(1); *see* Fla. Stat. § 760.10(1)(a).[2]

In assessing an employment-discrimination claim at summary judgment, we use one or more of three legal frameworks. First, and most obviously, direct evidence of discrimination necessarily creates a sufficiently genuine dispute to prevent summary judgment. Cases in which there is no direct evidence may proceed under either the burden-shifting analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or the "convincing mosaic" standard described in *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

The district court here found no direct evidence of race discrimination, and so applied the *McDonnell Douglas* framework. Before us, Harris insists that there *is* direct evidence—namely, an incredibly nasty comment made by her supervisor at Jackson Reeves, Gianella Carreno, that "blacks are lazy, and don't like to work." Indeed, on appeal, Harris puts all her eggs in the direct-evidence

---

[2] Claims under Title VII and the FCRA are analyzed under the same framework. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010) (discrimination and retaliation); *Wilbur v. Correctional Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004) (hostile work environment).

basket; she doesn't pursue either of the available methods of making out a circumstantial-evidence case. Under our precedent, she has thereby forfeited any circumstantial-evidence claims that she might have had. *See Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009) (holding that an argument under *McDonnell Douglas* was forfeited by failing to raise it in the district court); *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1274 (11th Cir. 2021) (holding that a convincing-mosaic argument was forfeited on appeal). Therefore, unless Carreno's statement constitutes direct evidence, Harris's employment-discrimination claim will fail.

We have held that only the "most blatant remarks," whose intent could be nothing other than to discriminate, constitute direct evidence of discrimination. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence"—not direct. *Id.* While statements made by a decisionmaker—*i.e.*, the one who ultimately fired, demoted, or punished the plaintiff—may constitute direct evidence, *see, e.g.*, *EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir. 1990), "remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination," *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Harris concedes that Carreno wasn't the formal decisionmaker but nonetheless insists that she was the driving force behind her discipline and eventual termination. Harris is thus making a so-called "cat's paw" argument, although "puppet master" might

more aptly describe it.  We have never applied the cat's-paw theory to a direct-evidence claim,[3] and we needn't decide today whether it so applies, because even if it did, it wouldn't be satisfied here.  A cat's-paw argument requires evidence that the ultimate (and manipulated) decisionmaker—the puppet—"followed the biased recommendation" of another—the puppeteer—"without independently investigating the complaint against the employee." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999).  But beyond "mere conclusions and unsupported factual allegations," which don't suffice to defeat summary judgment, *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005), Harris provides no evidence of a failure to investigate.  To the contrary, Harris concedes that the individual who fired her, Caridad Nieves, conducted her own investigation and relied on, if anything, the recommendation of someone other than Carreno.  And the supervisors who meted out Harris's pre-termination reprimands likewise independently investigated the underlying facts.  *See* Doc. 32-2 ¶¶ 7–12 (Freeman); Doc. 32-15 ¶¶ 3, 4–6 (Nieves).  Harris responds that those supervisors failed to investigate whether Carreno was biased, but they didn't have to—Harris mistakes the object of the required

---

[3] Neither decision that Harris cites held that a cat's-paw theory can be the basis for a direct-evidence claim.  *See Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998); *Wright v. Southland Corp.*, 187 F.3d 1287, 1304 n.20 (11th Cir. 1999).  The portion of *Wright* on which Harris relies also comes from an opinion joined only by a single judge.  *See id.* at 1306 (Cox, J., concurring) ("I do not join Judge Tjoflat's opinion."); *id.* (Hull, J., concurring) ("I concur only in the result reached by Judge Tjoflat's opinion.").

investigation. As we have explained, what's required to rebut a cat's-paw allegation is an investigation of "the complaint against the employee"—not of the bias of the recommender. *Stimpson*, 186 F.3d at 1332.

We therefore affirm the district court's grant of summary judgment on Harris's employment-discrimination claim.

**B**

To prevail on her hostile-work-environment claim, Harris must establish that she suffered unwelcome harassment, that it was based on a protected characteristic, and that it was sufficiently "severe or pervasive" to alter the terms and conditions of her employment and create an abusive working environment. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

The "severe or pervasive" requirement entails both an objective component—namely, that a reasonable person would find the environment hostile or abusive—and a subjective component. *Id.* at 1276. In evaluating the objective severity of the harassment, we consider (1) the frequency of the conduct, (2) its severity, (3) whether it was "physically threatening or humiliating, or a mere offensive utterance," and (4) whether it unreasonably interfered with the employee's job performance. *Id.* Title VII, as we have emphasized, is not a federal "civility code." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (en banc) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Harris alleges nine events or conditions that, she says, collectively rendered her workplace environment actionably hostile.

21-11016                 Opinion of the Court                 7

In particular, she asserts that over a three-year period, her supervisors (1) made the one highly offensive comment (*i.e.*, Carreno's slur that "blacks are lazy, and don't like to work"), (2) restricted her access to a supply closet, (3) micromanaged and excessively monitored her work, (4) solicited peers to report on her violations, (5) made her work alongside colleagues with histories of abuse, (6) once poked her on the shoulder, (7) wrongfully disciplined her, (8) made her perform more clerical duties than her peers, and (9) disbelieved or otherwise ignored her complaints of race discrimination. The district court refused to consider parts of No. 3 and all of No. 5 on the ground that they were time-barred. It otherwise found that the conditions that Harris alleged weren't sufficiently severe or pervasive to constitute a hostile work environment.

Before us, the parties dispute which of the nine items we should consider. Harris argues that the district court incorrectly excluded evidence from her time at Jackson North as time-barred. Public Health Trust counters that several of the other events that Harris alleges are irrelevant because they weren't caused by her race. Separately, the parties dispute whether the workplace conduct met the severe-or-pervasive threshold. We'll address those issues in turn.

1

As an initial matter, we conclude that the district court properly refused to consider the Jackson North evidence, albeit for the wrong reason. Title VII and the FCRA require employees to file administrative complaints within a specified number of days

8                    Opinion of the Court                    21-11016

from the challenged employment action(s). *See* 42 U.S.C. § 2000e-5(e); Fla. Stat. § 760.11(1). In general, events that occur outside the prescribed period aren't actionable. There are two respects, though, in which such events might be relevant.[4] First, for any type of discrimination claim, an employee can cite "prior acts as background evidence in support of a timely claim." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Second, a single, continuing hostile work environment can include events that pre-date the applicable time period. *Id.* at 115–21. That's because "[h]ostile environment claims are different in kind" in that they are "composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 115, 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). Importantly, though, events that occurred outside the prescribed period aren't part of the same timely hostile-work-environment claim if they aren't related to those that occurred within the period. *Id.* at 118.

The district court correctly held that the events that Harris described at Jackson North—her previous supervisors' micromanaging and her being made to work with abusive colleagues—were not relevant "background evidence." By background evidence, we mean "prior practices" that are "relevant to show[ing] independently actionable conduct occurring within the statutory period." *Fisher v. Procter & Gamble Mfg. Co.*, 613 F.2d 527, 540 (5th Cir.

---

[4] The citations that follow interpret Title VII. Florida's courts have adopted the same approach to the FCRA. *See, e.g., Maggio v. Dep't of Lab. & Emp. Sec.*, 910 So. 2d 876, 879–80 (Fla. 2d Dist. Ct. App. 2005).

21-11016                 Opinion of the Court                 9

1980) (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)). Such background evidence could, for example, show that the within-period practices were caused by discrimination, *see Jepsen v. Fla. Bd. of Regents*, 610 F.2d 1379, 1383 (5th Cir. 1980), or that they were severe or pervasive. The events at Jackson North do neither. Actions taken by managers at one location aren't probative of what *caused* actions later taken by different managers at a different location. Nor are they probative of the later actions' severity.

The district court failed to consider whether the Jackson North events were part of the same, ongoing hostile work environment, but its error doesn't affect the outcome because they weren't. In *Watson v. Blue Circle, Inc.*, we held that where an employer confronted a harassing supervisor and the employee thereafter experienced no further problems with that individual, the pre-confrontation events weren't part of the same practice as later events. 324 F.3d 1252, 1259 (11th Cir. 2003). So too here. In 2014, Public Health Trust granted Harris's requested transfer from Jackson North to Jackson Reeves. Because Harris changed physical work environments and thereafter encountered no discrimination at the hands of her former supervisors, the events at Jackson North can't be deemed part of the same, continuing practice as those that occurred at Jackson Reeves. *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 78 (2d Cir. 2010) (explaining that transfer to a "different sector of the building" is one reason prior events were unrelated).

**2**

Public Health Trust says that several incidents that occurred at Jackson Reeves shouldn't be considered because they weren't caused by Harris's race. Public Health Trust is correct that federal law doesn't prohibit hostility in the workplace—only hostility caused by impermissible discrimination. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Accordingly, Harris must ultimately show that "but for the fact of her" race, "she would not have been the object of" the actions that collectively constitute her hostile-work-environment claim. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247–48 & 1248 n.5 (11th Cir. 1999) (en banc) (assessing discrimination on an action-by-action basis and citing, among other cases, *Brill v. Lante Corp.*, 119 F.3d 1266, 1274 (7th Cir.1997)); *cf. Oncale*, 523 U.S. at 81 ("Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] . . . because of . . . sex.'") (alteration in original). At summary judgment, therefore, she must demonstrate a genuine factual dispute about the causation issue.

We agree with Public Health Trust that three of the incidents weren't caused by Harris's race and, accordingly, shouldn't be considered as part of the hostile-work-environment calculus. The first is straightforward: In affirming the district court's grant of summary judgment on Harris's employment-discrimination

claim, we have already concluded that her discipline wasn't based on her race.[5]

Second, the poke on the shoulder. The only evidence is Harris's testimony: "[O]n one occasion I was in the lab room, and Ms. Gianella came in and she tapped me on—I was—I had my back turned and she came and tapped me on my shoulder, and I said, 'Don't touch me. Why are you touching me?'" Doc. 32-5 at 81–82. To be sure, that is evidence that the event occurred. But "discrimination is a comparative concept." *Lewis v. City of Union City*, 918 F.3d 1213, 1223 (11th Cir. 2019) (en banc). Without evidence that the shoulder-poke was *caused by* discrimination, such as that similarly situated white employees were treated differently, "there's no way of knowing (or even inferring) that discrimination [was] afoot." *Id.* Because Harris has provided neither, she hasn't

---

[5] Technically, the standards applicable to Harris's employment-discrimination and hostile-work-environment claims are different. For whatever reason, we haven't applied the three traditional frameworks—direct evidence, *McDonnell Douglas*, and "convincing mosaic"—to hostile-work-environment claims. Others have. *See., e.g.*, *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221 (10th Cir. 2015); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007); *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 792 (8th Cir. 2004); *Bhatti v. Trustees of Bos. Univ.*, 659 F.3d 64, 70 (1st Cir. 2011); *cf. also Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc) (noting that a hostile-work-environment claim is just a species of disparate-treatment claim). We needn't go down that road today because, for reasons already explained, we conclude that Harris hasn't presented evidence to create a genuine dispute about whether her discipline was caused by her race.

created a genuine dispute about whether the event was caused by her race.

Finally, access to the supply closet. At a weekly staff meeting, Public Health Trust announced a change in its policy: Access to the supply closet would thereafter be limited to a few specific individuals. Harris wasn't one of those given access. But she hasn't alleged that other similarly situated white nurses had access. Nor does she suggest in any other way—beyond mere assertion—that the change in policy or the decision to deny her access had anything to do with her race. Accordingly, Harris hasn't created a genuine factual dispute sufficient to survive summary judgment.

**3**

On, then, to the merits of Harris's hostile-work-environment claim. Of the original nine alleged events, we are left with only five: Harris's supervisors at Jackson Reeves made one highly offensive comment, micromanaged and excessively monitored her work, solicited peers to report on her violations, made her perform clerical duties, and disbelieved or ignored her complaints of race discrimination.

Even considering Harris's limited evidence in the light most favorable to her, these are not, given the totality of the circumstances, sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment. *See Miller*, 277 F.3d at 1275. On the one hand, Carreno's slur about black employees' poor work ethic was ignorant and extremely demeaning. On the other hand, it was isolated, it wasn't

directed specifically at Harris, and it wasn't as severe as the remarks that courts have found created hostile environments. *See Smelter v. Southern Home Care Servs. Inc.*, 904 F.3d 1276, 1282 (11th Cir. 2018) (describing seven similarly severe comments by the plaintiff's supervisors); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 580 (D.C. Cir. 2013) (Kavanaugh, J., concurring) (discussing "the n-word"). From the limited evidence provided, there is no reasonable inference that the other conduct was particularly frequent, physically threatening, or humiliating or—even considered together with Carreno's statement—that it unreasonably interfered with Harris's job performance.

We thus conclude that the district court properly granted summary judgment to Public Health Trust on Harris's hostile-work-environment claim.

### C

Title VII and the FCRA prohibit an employer from retaliating against an employee for opposing an unlawful employment practice. *See* 42 U.S.C. § 2000e-3(a); Fla. Stat. § 760.10(7).

A retaliation claim based on circumstantial evidence is analyzed under the *McDonnell Douglas* framework. *See Crawford v. Carroll*, 529 F.3d 961, 975–76 (11th Cir. 2008). If the plaintiff establishes a prima facie case of retaliation, and the employer proffers a legitimate, nondiscriminatory reason for its actions, then the plaintiff must show that the employer's stated reason is pretextual. *See Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020) (en banc). In assessing pretext, the court "must evaluate

whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (quoting *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996)). Ultimately, the employee's burden is to prove that "the desire to retaliate was the but-for cause" of the challenged action. *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

Here, because the district court found that Harris's retaliation claims failed on several grounds, we can affirm on any one of them. *See Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 680 (11th Cir. 2014). We conclude that, even if Harris presented a prima facie case, she failed to show that the employer's proffered reasons for her discipline and termination were pretextual.

Public Health Trust stated its reasons—primarily tardiness, absences, and insubordination—in six disciplinary-action reports, two suspension letters, and a termination letter. Other than her own testimony, Harris offers essentially no evidence that she wasn't tardy, absent, or insubordinate. Nor does she provide any basis for concluding that the hospital's timekeeping software's records were inaccurate.[6]

---

[6] Harris also cites a co-worker's testimony that she (*i.e.*, the co-worker) did "not have knowledge of Ms. Harris being excessively tardy or absent" and "never witnessed Ms. Harris being insubordinate." Doc. 42-5. But even taking them in the light most favorable to Harris, those general attestations don't

Harris separately argues that even if the underlying facts are true, others wouldn't have been punished for the same underlying facts—and, therefore, that her treatment was the product of race discrimination. While that would support a claim if true, Harris offers only "mere conclusions and unsupported factual allegations" of it. *Ellis*, 432 F.3d at 1327. She hasn't provided any evidence that, for instance, she was treated worse than any other nurse with a spotty attendance record. And that is dispositive. Because Harris offers nothing that would allow a fact-finder to conclude that "the desire to retaliate was the but-for cause of the challenged employment action," *Nassar*, 570 U.S. at 352, the district court correctly concluded that she has failed to create a genuine dispute about whether Public Health Trust's stated reasons were pretextual.[7]

## III

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**

---

create a genuine dispute about whether the documented, specific instances—which the coworker doesn't deny—actually occurred.

[7] Neither of the other two methods of showing discrimination applies. Harris hasn't presented any direct evidence of retaliation. And because Harris hasn't raised a convincing-mosaic argument, our precedents hold that she has forfeited it. *See supra* at 4.