[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 22-13880

Non-Argument Calendar

_____

BOYAN SUBOTIC,

                        Plaintiff-Appellant,

*versus*

JABIL, INC.,
a Foreign Profit Corporation,
a.k.a. Jabil Circuit, Inc.,

                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cv-02137-VMC-SPF

_____

Before JORDAN, ROSENBAUM, LAGOA, Circuit Judges.

PER CURIAM:

Boyan Subotic appeals the district court's order granting summary judgment to Jabil, Inc., ("Jabil") on his claims of discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, 42 U.S.C. § 1981, and the Florida Civil Rights Act of 1992 ("FCRA"), FLA. STAT. § 760.10, and his retaliation claims under Title VII, § 1981, the FCRA, and the Florida Whistleblowers Protection Act ("FWA"), FLA. STAT. § 448.102. Jabil also seeks attorney's fees under Federal Rule of Appellate Procedure 38. After careful review, we affirm the rulings of the district court but deny Jabil's motion for fees.

## I.

Subotic was born and raised in Bosnia before moving to the United States when he was 19 years old, and he describes his ethnicity as "Serbian." Subotic also considers himself to be a "white Caucasian male."

In April 2017, Jabil hired Subotic as a full-time employee in the position of Support Technician II ("Tech II") at Jabil's Defense and Aerospace facility in St. Petersburg, Florida. Subotic self-identified as "White (not Hispanic or Latino)" on his employment forms. The form did not have a space for Subotic to indicate his Serbian ethnicity or national origin, and Subotic did not identify

himself or indicate that he was either from Bosnia or of Serbian national origin.

In becoming a Jabil employee, Subotic received a Jabil Handbook and agreed to follow Jabil's policies and procedures. As relevant here, Subotic agreed to "[m]aintain discretion and confidentiality in all areas pertaining to IT systems." He also agreed to follow the company's Global Information Security Policy. That Policy states that "[a]ll accounts providing access to Jabil information resources must be unique to each individual and must be used only by the assigned individual or approved by Global Information Security." Jabil considers a violation of the security policy to be "a serious offense" that could result in termination and legal action.

Similarly, Jabil's Standards of Performance and Conduct section of the employee handbook prohibited the following "[i]nappropriate [c]onduct," the violation of which could result in discipline, including termination: misuse of company or employee property, harassing behavior, deliberate damage or attempts to damage company or employee property, and tampering with security equipment.

At Jabil, each employee is assigned an individual Jabil computer and email account. The username for an employee's Jabil account is their 9-digit Jabil employee number.

As a Tech II, Subotic also had a Jabil administrator account with its own unique account number. Subotic understood that he was allowed to access other employees' Jabil accounts only when the user or his supervisors requested he do so for IT purposes. At

Jabil, employees could request onsite IT assistance by (1) submitting an IT ticket, (2) going to the IT desk to ask a Tech for help, or (3) calling the IT desk or Tech for assistance.

From the time Subotic began working at Jabil and until November 2019, Subotic directly reported to Site IT Manager Romeo Cooper. As Subotic's supervisor, Cooper rated Subotic's performance in 2017 and 2018 as "meets standards." But in 2019, Cooper found that Subotic's performance declined, rating him as only "partially meets standards" and advising Subotic that he needed to "improve his support skills as a Support Technician II."

In November 2019, Andrew Eells was named IT Supervisor, and Eells became Subotic's new direct supervisor. Eells, in turn, reported to Cooper at that time. Like Cooper, Eells found Subotic's work as a Tech II to be lacking. Cooper thought Subotic's skills were closer to a level-one support technician.

On May 18, 2020, Natasha Holton was promoted to Site IT Manager, replacing Cooper. Holton's duties required her to improve the performance of the onsite IT team, including Subotic. Eells remained Subotic's direct supervisor, but he now reported to Holton.

Subotic states that he does not believe he was discriminated against on any basis while working at Jabil from 2017 through mid-2020. At this point, though, Subotic alleges that his supervisors Holton and Eells unfairly disciplined him several times because he was Serbian, and that ultimately led to his unlawful termination.

According to Subotic, he experienced discrimination when he was disciplined over his failure to execute his on-call duties. Outside normal operating hours and on the weekends, Jabil technicians rotate being on call. Jabil's expectation was that the on-call technician would (1) answer the on-call telephone when it rang, (2) immediately begin working on resolving the issue and, (3) depending on the nature and severity of the issue, travel to the facility to resolve the issue if it could not be resolved remotely.

While on call on July 11, 2020, Subotic did not answer two phone calls from Holton and did not call her back for three hours, even though he was aware he was required to answer his phone while on call. Once Subotic learned that two employees were locked out of their accounts and needed help, he sent the users emails—even though Subotic knew that they "probably [could] not" access or read the emails because they were locked out of their computers. The two employees were eventually sent home because they could not work while locked out of their computers.

On July 14, 2020, Holton and Eells issued Subotic a verbal warning for his failure to properly perform his on-call duties on the weekend of July 11–12, 2020. Jabil's Human Resources Generalist Jaclyn Mitchell approved the warning before Holton and Eells issued it.

Subotic was disciplined again a week later for failing to carry an onsite phone. Jabil had an onsite IT phone that technicians were supposed to rotate carrying, according to an agreed-upon schedule. On July 21, 2020, Subotic's co-worker, Support Technician I Scott

Marsala, saw that Subotic was not carrying the onsite phone and reported the violation to Eells.  Later that morning, Holton and Eells issued Subotic a written warning for his failure to carry the onsite phone.  Mitchell again approved the warning before Holton and Eells issued it.  Subotic cannot recall whether he was carrying the onsite phone on July 20, 2020, but he did not object to the written warning.

Subotic claims that he was unfairly singled out for discipline.  According to Subotic, Marsala also had failed to carry the onsite phone as required, yet Marsala was not disciplined.  But Subotic did not report Marsala at the time of the incident, and his supervisors were aware that Marsala forwarded calls to the onsite phone to their regular phone so that carrying the onsite phone was not necessary for Marsala to execute his duties.

Ten days later on Friday, July 31, 2020, Subotic sent an email to Human Resources Manager Deanna Doheny, with copies to Eells and Holton, alleging that his "manager" had discriminated against him based upon his "national origin as being of a Serbian ethnicity."  Doheny began an investigation and met with Subotic the same day to get more information about his claims.  Subotic alleged that Holton was discriminating against him by writing him up when she was not disciplining other technicians for similar infractions.  Subotic had not been disciplined in the prior three years when Cooper had been the Site IT Manager.

Subotic admitted to Doheny that his supervisors, Holton and Eells, had never made any negative comments about his

Serbian ethnicity. And Holton claims she was unaware of Subotic's national origin until he identified himself as Serbian in his July 31, 2020, email. Subotic also does not recall otherwise informing her of his ethnicity. Eells, though, knew that Subotic was Serbian because Subotic had told him. As for any other knowledge of Subotic's national origin on the part of Jabil employees, Subotic said that his co-worker, Marsala, had stated he did not want to try the "pity ethnic food" that Subotic had brought for lunch one day.

On Monday, August 3, 2020, the following business day, Doheny interviewed Holton about Subotic's allegations. Holton denied discriminating against Subotic for any reason. She also advised Doheny about the warnings that she and Eells had issued to Subotic in July 2020 for his failure to perform his on-call duties. And Holton told Doheny that Mitchell had reviewed and approved each disciplinary warning for Subotic.

Holton advised Doheny that she and Eells had also disciplined other employees for similar job-performance issues. She pointed, for instance, to Tech II Manny Freitas, who was issued a verbal warning on June 1, 2020, a written warning on June 29, 2020, a final written warning on July 17, 2020, and then terminated on July 28, 2020, for his repeated job-performance issues, including accessing employee accounts without a service ticket. Holton also mentioned a counseling session that she and Eells held with Tech I Marsala about complaints they had received from other technicians, including Subotic, about Marsala's teamwork.

Finally, Holton told Doheny that in mid-July 2020, she had begun investigating a complaint made by an employee, Tatianna Lane, that Subotic had been trying to access her Jabil account without authorization. In an interview with Lane, Doheny learned that Lane had been experiencing an ongoing issue where she would be unable to log in to her Jabil account because of "too many failed login attempts," despite the fact that Lane herself had made no failed login attempts. Lane had asked Marsala to help her figure out what was going wrong, and Marsala had discovered that Lane was locked out of her account because of unsuccessful login attempts from Subotic. Lane suspected that Subotic was attempting to log in to her computer because of several interpersonal incidents that had happened in the past. Subotic had previously inappropriately touched Lane's vagina after a Jabil holiday party, expressed that he had "strong feelings" for her, and showed up at her apartment uninvited.

After Lane reported this information to Holton, Holton and another employee, IT Architect Rob Ingenthron, investigated the system logs. Holton and Ingenthron discovered that Subotic's login was used in six attempts to access or disable Lane's account, from March to July 2020. There were no corresponding IT tickets for Lane during these times, and Lane denied otherwise asking Subotic for assistance. Doheny also reviewed video footage of the IT area from the period that one of the attempts occurred. In it, she saw a man sitting in Subotic's cubicle alone. Doheny presumed the man was Subotic because she saw Subotic enter his cube. Still, though, in her deposition, Doheny admitted that she had "no

actual physical evidence" that the person sitting behind Subotic's computer was actually Subotic.

The investigation into Lane's claims revealed two other attempts to access Lane's account from computers besides Lane's and Subotic's: once from a computer assigned to employee Duy Huynh and once from a computer assigned to employee Nangellie Sanlnocencio.  Doheny investigated these login attempts and determined that Lane was responsible for the attempts, "as the multiple Jabil computers assigned to these two employees sat in JDAS conference rooms and on the JDAS floor, respectively, and were used by numerous employees," including Lane.  Likewise, Holton attested that the computer in Duy's name was a conference-room computer that Lane had likely tried to use herself, and Lane "thought she had logged in" on Sanlnocencio's computer once.  Lane denied making any attempts to log in to her Jabil account from Subotic's computer.

On or about August 12, 2020, Doheny provided Subotic with her investigative findings on his complaint of discrimination against Holton.  Doheny advised Subotic that she found no evidence that the warnings he received were unwarranted or that Holton was treating him differently from other employees.  Subotic told Doheny that he did not have any other concerns or evidence he wanted her to investigate, so Doheny informed him the investigation was closed.

Several days later, Doheny interviewed Subotic regarding Lane's lockout allegations.  Doheny did not mention Lane by name

in this conversation and referred only to "another employee" whose account Subotic had attempted to access at least three times. In response to Doheny's questions, Subotic claimed that he had locked himself out of his Jabil account, so he created a fake username and used a "random" employee identification number to try to gain access. But Subotic could not offer any explanation as to (1) why he had repeatedly used the same "random" employee identification number belonging to Lane; (2) why these "random" attempts after he had a "lockout" occurred on different dates; or (3) why he had administratively disabled Lane's computer on two other occasions. Subotic did not claim that he had a legitimate reason to access another employee's account, such as an IT ticket or a request for assistance from the employee.

Doheny determined Subotic had committed a serious violation of Jabil's Security Policy and Code of Conduct, specifically of Sections 6.9.4 and 6.9.5, by trying to access Lane's Jabil account and disabling her computer without authorization. As a consequence, Dohoney recommended that Subotic's employment be terminated. Doheny advised Jabil's Director of Operations, Ron Anderson, and Holton of her recommendation to fire Subotic for his breach of Jabil's policies, and they agreed with the recommendation.

On August 18, 2020, Anderson and Doheny met with Subotic and advised him that his employment with Jabil was being terminated because of his violation of Jabil policies. On the same day that Subotic was fired, August 18, 2020, Holton and Eells issued

Tech I Eric Flynn a verbal warning for his failure to carry the on-call phone when he was the technician designated as on call for the week of August 10–17, 2020.

Subotic initiated this action on September 7, 2021. He asserted national-origin discrimination and retaliation in violation of federal and state law. The district court awarded summary judgment in Jabil's favor on all claims. *Subotic v. Jabil, Inc.*, No. 8:21-CV-2137-VMC-SPF, 2022 WL 10487074, at *1 (M.D. Fla. Oct. 18, 2022). Subotic now appeals.

## II.

We begin with Subotic's argument that the district court abused its discretion when it declined to consider any alleged factual disputes or additional material facts from Subotic that Subotic did not support with proper citations. The district court's order on summary-judgment procedures required the parties to "set forth a pinpoint citation to the record" when disputing a fact, or the court would deem the fact admitted if otherwise supported. The court also informed the parties that "the page and line number of the deposition transcript *must* be included" for any factual statements they wanted to admit. (Emphasis added).

In violation of the district court's order, Subotic failed to properly dispute certain statements of material fact when he did not cite to any record evidence in support of his dispute. Subotic also failed to properly cite deposition testimony because he did not include specific line citations. *Subotic*, 2022 WL 10487074, at *7. For these reasons, the district court declined to consider the

improperly cited material and deemed admitted any material fact that Subotic had failed to properly dispute. *Id.*[1]

"Because the decision to admit or to exclude evidence is a matter for the sound discretion of the trial judge," we review the district court's application of the rules in its order for abuse of discretion. *United States v. Gold*, 743 F.2d 800, 815 (11th Cir. 1984); *see Reese v. Herbert*, 527 F.3d 1253, 1267 n.22 (11th Cir. 2008) (reviewing the court's application of the Federal Rules of Civil Procedure and a corresponding local rule for abuse of discretion). Our review under the abuse-of-discretion standard is limited, and we give the district court considerably more leeway than if we were reviewing the decision *de novo*. *Young v. City of Palm Bay*, 358 F.3d 859, 863 (11th Cir. 2004). The district court enjoys a range of options under the abuse-of-discretion standard. So long as the district court does not commit a clear error in judgment, we will affirm its decision under this standard. *Id.*

Federal Rule of Civil Procedure 56(c)(1)(A) requires a party who asserts a genuine dispute of fact to support the assertion by citing to particular parts of materials in the record, including depositions. Judges generally cannot impose disadvantages for noncompliance with requirements not in federal law, federal rules, or the local rules "unless the alleged violator has been furnished in the

---

[1] The district court also excluded any evidence that Subotic failed to properly include in his statement of additional material facts, such as evidence in footnotes in the body of his argument. *Subotic*, No. 2022 WL 10487074, at *7. Subotic does not appear to dispute this exclusion of evidence.

particular case with actual notice of the requirement." FED. R. CIV. P. 83(b).  Furnishing the litigants with the judge's practices or an order in a case specifically adopting those preferences, though, suffices to give actual notice.  *Id.* advisory committee's note to 1995 amendment.

Here, the district court did not abuse its discretion in enforcing the Federal Rules of Civil Procedure or the preferences it articulated in its order against Subotic.  The court notified the parties in its order that it required line numbers in citations to deposition testimony, and it noted the consequences for failing to comply.  In other words, the order gave Subotic actual notice of the court's requirements.  *Id.*  Therefore, the district court did not commit a clear error of judgment in refusing to consider Subotic's improperly cited evidence.

## III.

We review the grant of summary judgment *de novo*.  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).  When we review a motion for summary judgment, we must view all the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences and resolving all reasonable doubts in that party's favor.  *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008).  Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if it has a real basis in the record and the evidence

14                  Opinion of the Court                  22-13880

would allow a reasonable jury to rule in favor of the nonmovant. *Ellis v. England*, 432 F.3d 1321, 1325–26 (11th Cir. 2005). We may affirm an order granting summary judgment on any adequate basis that the record reflects, regardless of whether it is the one on which the district court relied. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1117 (11th Cir. 1993).

## III.

We begin with Subotic's discrimination claims, brought under Title VII and the FCRA.[2] Title VII prohibits an employer from discriminating against a person with respect to the "terms, conditions, or privileges of employment, because of such individual's national origin." 42 U.S.C. § 2000e-2(a)(1). The FCRA prohibits an employer from discharging or discriminating against any individual with respect to compensation, terms, conditions, or privileges of

---

[2] Subotic also brough national-origin discrimination and retaliation claims under § 1981. The district court properly granted summary judgment in Jabil's favor because by its terms, § 1981 applies to claims of discrimination based on race, not national origin. *Subotic*, 2022 WL 10487074, at *13 (citing 42 U.S.C. § 1981(a)). While Subotic claimed below and in his brief before this Court that "Serbian" is not just a national origin, but also an ethnicity, he does not address the district court's primary reasons for denying his claim: that Subotic's complaint does not reference ethnicity at all, that Subotic did not seek to amend his complaint to state that the § 1981 claim was based on ethnicity, and that it is well-established that plaintiffs cannot amend their complaints through arguments in briefs. *Id.* Because Subotic fails to challenge the district court's ruling on these grounds, we affirm it. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). Still, though, we note that even if Subotic had properly pled his § 1981 claims, they would still fail for the reasons we discuss later in this opinion.

employment, because of such individual's national origin. FLA. STAT. § 760.10(1)(a). Because the FCRA is modeled on Title VII, Florida courts apply Title VII caselaw when they interpret the FCRA. *Jones v. United Space All., L.L.C.*, 494 F.3d 1306, 1310 (11th Cir. 2007).

As an initial matter, we address the theories of discrimination we consider on appeal. In the district court, Jabil argued under the *McDonnell Douglas*[3] burden-shifting framework that Subotic could not establish a prima facie case of national-origin discrimination or show that its legitimate, nondiscriminatory reason for firing Subotic was pretext. In response, Subotic disavowed any single-motive theory for his claims, stating that he "d[id] not rely on the *McDonnell Douglas* analysis" but on a mixed-motive theory of liability. As a result, the district court found that Subotic had waived any argument that his claims should survive summary judgment under the *McDonnell Douglas* framework. *Subotic*, 2022 WL 10487074, at *11. The district court also considered Jabil's arguments against Subotic's mixed-motive theory, made for the first time in its reply, because Subotic's deposition testimony suggested that he was bringing single-motive, not mixed-motive, claims. *Id.*

On appeal, Subotic argues that the district court should have considered whether Jabil's reason for firing him was pretextual, anyway, and it should have considered Jabil's mixed-motive arguments waived. We disagree on both counts.

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).

First, we agree with the district court that Subotic affirmatively waived any single-motive theory of liability when he explicitly disclaimed it in his response below. *See Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273–74 (11th Cir. 2021) (finding that the plaintiff had forfeited any "convincing mosaic" argument when he failed to raise it in relation to specific claims).[4]

Second, the court did not err in considering Jabil's arguments against Subotic's mixed-motive theory, given that Subotic insisted in discovery that the sole motive behind his discipline and termination was his national origin. District courts may consider new arguments made in a reply brief when those arguments respond to unexpected issues raised for the first time in the opposing party's response. *See Bank of Brewton v. Travelers Companies, Inc.*, 777 F.3d 1339, 1342 n.3 (11th Cir. 2015) (holding that it was appropriate for a movant to respond to an argument in its reply that was "not fairly disclosed by the pleadings").

We also note, as a practical matter, that this is all of little consequence because Subotic cannot establish that Jabil's decision to terminate him was even partially motivated by illegal bias.

This brings us to Subotic's mixed-motive arguments. A mixed-motive theory of discrimination involves showing that illegal bias, such as bias based on national origin, was a "motivating

---

[4] On appeal, Subotic discusses the convincing-mosaic theory for the first time. That is too late, so this argument has also been waived. *Bailey*, 992 F.3d at 1273–74.

factor" for an adverse employment action, even if other factors also motivated the action. *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016). A mixed-motive theory is distinct from a theory based on "multiple but-for causes," any one of which would be a "necessary condition" in an employment decision. *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1339 (11th Cir. 2023). With a mixed-motive theory, "a plaintiff need only show that a protected consideration contributed in some way to the outcome—even if it ultimately changed nothing." *Id.* The mixed-motive theory framework requires a court to ask whether the plaintiff has offered evidence sufficient to convince a jury that (1) the defendant took an adverse employment action against the plaintiff; and (2) a protected characteristic was a motivating factor for the defendant's adverse employment action. *Quigg*, 814 F.3d at 1239.

Here, the court did not err in granting summary judgment to Jabil on Subotic's discrimination claims under Title VII and the FCRA. First, the record shows that Holton was unaware of his national origin when she disciplined him for failure to carry out his on-call duties.[5] Second, while Holton was aware of Subotic's

---

[5] Subotic raises a cat's paw argument for the first time on appeal. Under a cat's paw argument, the plaintiff must show that "the ultimate (and manipulated) decisionmaker—the puppet—followed the biased recommendation of another—the puppeteer—without independently investigating the complaint against the employee." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1401 (11th Cir. 2023) (cleaned up). First, Subotic waived this theory because he never raised it in the district court. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). Second, even if he hadn't, Holton testified that Marsala provided a time-stamped photograph of the phone left on

national origin when she terminated him, there is no evidence that Holton or Eells harbored any bias towards Serbians.  Subotic either admitted to or failed to deny that he violated Jabil's policies and his job duties, and other technicians were disciplined for similar offenses.  In particular, Subotic admitted to attempting to access Lane's computer without permission from Lane or his supervisors on multiple occasions, a clear violation of Jabil's policies.  Therefore, the district court did not err when it granted summary judgment for Subotic's discrimination claims in Jabil's favor.

## IV.

For similar reasons, Subotic's retaliation claims under Title VII, the FCRA, and the FWA also fail.  Under these statutes, an employer may not retaliate against an employee because the employee has opposed an illegal employment practice.  42 U.S.C. § 2000e-3(a); FLA. STAT. § 760.10(7); FLA. STAT. § 448.102(3).  Subotic relies on circumstantial evidence and the three-step, burden-shifting *McDonnell Douglas* framework for his retaliation claims.  *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010); (applying *McDonnell Douglas* to Title VII retaliation claims); *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000) (applying the burden-shifting analysis used in Title VII retaliation

---

the desk.  And in any case, Marsala's single comment about Subotic's "pity ethnic food," while certainly inappropriate, is not enough without more to raise the inference that his seemingly accurate report that Subotic was not carrying the phone was motivated by bias, such that it tainted Holton and Eells decision to discipline Subotic.

cases to an FWA claim); *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998) (holding that decisions construing Title VII guide the retaliation analysis under the FCRA, such that if a retaliation claim cannot stand under Title VII, it cannot stand under the FCRA).

Under this framework, to establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *McAlpin v. Sneads*, 61 F.4th 916, 927 (11th Cir. 2023) (FWA claims); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (Title VII claims). If the plaintiff makes a prima facie showing, the burden shifts to the defendant to proffer a legitimate, nonretaliatory reason for taking the adverse action. *McAlpin*, 61 F.4th at 932. If the defendant provides such a reason, the burden shifts back to the plaintiff to establish that the proffered reason is mere pretext for retaliation. *Id.*

The plaintiff can show pretext by establishing that it was more likely that a retaliatory reason motivated the employer or by pointing to "weaknesses, inconsistencies, incoherencies, or contradictions" in the employer's explanation. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010). If the proffered reason is one that would motivate a reasonable employer, a plaintiff cannot successfully rebut the reason by simply quarreling with the wisdom of the employer's decision. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). And when we assess whether an

employer has properly imposed an adverse action on an employee based on that employee's conduct, the question is not whether the employee actually engaged in the conduct, but instead whether the employer had a good-faith belief that the employee had done so. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1148 (11th Cir. 2020).

Here, the district court did not err in granting summary judgment to Jabil on Subotic's retaliation claims. Subotic failed to rebut Jabil's legitimate, nonretaliatory reason for his termination. Subotic admitted in his interview with Doheny that he attempted to access another employee's computer without authorization from Lane or a supervisor, a clear violation of Jabil's policies. And Jabil had a good-faith belief that Subotic had also locked Lane out of her computer on several occasions, based on the logs from the IT department and the video showing Subotic's occupied cubicle at the time of the incident, another clear violation of Jabil's policies. *See Gogel*, 967 F.3d at 1148. The one-off attempts from other computers to access Lane's account were reasonably attributed to conference-room computers that Lane suggests she may have used herself. Subotic claims these reasons are "incoheren[t]" and inconsistent. We disagree. To the contrary, they show that Jabil took the time to investigate the claims of wrongdoing and separated out what they found to be Subotic's violations from Lane's actions that were not attributable to Subotic. Subotic's unauthorized series of attempts to access Lane's account clearly violated Jabil's security and conduct codes. Therefore, Jabil offered a legitimate business reason for its decision to terminate Subotic's employment, and

Subotic failed to rebut that legitimate reason.  In short, the district court did not err when it ruled in favor of Jabil on all of Subotic's retaliation claims.

## V.

For the foregoing reasons, we affirm the district court's summary-judgment order in favor of Jabil on all claims.  We **DENY** Jabil's motion to assess damages and costs to Subotic under Federal Rule of Appellate Procedure 38 because Subotic's claims are not "utterly devoid of merit," given Marsala's alleged comment.  *See Parker v. Am. Traffic Sols., Inc.*, 835 F.3d 1363, 1371 (11th Cir. 2016).

**AFFIRMED.**