[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 23-14079

Non-Argument Calendar

————————————————

LOUEMMA CROMITY,

Plaintiff-Appellant,

*versus*

CITY OF ORLANDO,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cv-00924-CEM-EJK

————————————————

Before WILSON, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

Louemma Cromity appeals the district court's order granting the City of Orlando's ("Orlando") motion for summary judgment and dismissing Cromity's claims of hostile-work-environment racial discrimination, disparate-treatment racial discrimination, and retaliation under Title VII and Florida's Civil Rights Act ("FCRA"). Cromity argues on appeal that the district court erred by granting summary judgment to Orlando on her hostile-work-environment claim because the district court improperly placed the summary-judgment burden on her, and because Orlando failed to prove that there was no genuine issue of material fact as to whether she experienced severe or pervasive racial harassment. Additionally, Cromity argues that the district court erred by granting summary judgment to Orlando on her retaliation claim because, she says, she presented sufficient evidence showing that Orlando's stated legitimate, nonretaliatory reasons for its adverse actions were pretextual. After careful consideration, we affirm the district court's decisions.

The facts are known to the parties, and we repeat them here only as necessary to decide the case.

**I**

"We review a district court's grant of summary judgment *de novo*, applying the same legal standards applied by the district court." *Valley Drug Co. v. Geneva Pharms., Inc.*, 344 F.3d 1294, 1303

23-14079                Opinion of the Court                3

(11th Cir. 2003). A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We view the summary judgment record in the light most favorable to the non-moving party, and we draw all reasonable inferences in favor of the non-moving party." *Stanley v. City of Sanford*, 83 F.4th 1333, 1337 (11th Cir. 2023). "Showing a genuine issue for trial 'requires more than speculation or a mere scintilla of evidence.'" *Buckley v. Sec'y of Army*, 97 F.4th 784, 792 (11th Cir. 2024) (quoting *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1122 (11th Cir. 2014)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). But the Supreme Court has held that there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the [nonmovant]'s claim." *Id.* (emphasis in original). For that reason, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In that circumstance, "[t]he moving party is 'entitled to a judgment as a

matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). The same is true under the FCRA. *See* Fla. Stat. § 760.10(1)(a). "Claims under Title VII and the FCRA are analyzed under the same framework." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1300 n.2 (11th Cir. 2023).

"A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To establish a hostile-work-environment claim, a plaintiff must show:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive

> working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Id.*

"[O]nly conduct that is 'based on' a protected category, such as race, may be considered in a hostile work environment analysis." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012). "Innocuous statements or conduct, or boorish ones that do not relate to the [race] of the actor or of the offended party (the plaintiff), are not counted." *Id.* (alteration in original) (quotation marks omitted). "This 'inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). We have concluded that a comment referring to a plaintiff as an "angry Black woman" can create an inference of discrimination. *Buckley*, 97 F.4th at 796.

"[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). Arguments raised for the first time in a reply brief are not properly before us. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682–83 (11th Cir. 2014).

## A

As an initial matter, Cromity has abandoned any challenge to the district court's rejection of her disparate-treatment race-discrimination claim because she did not raise it in her initial brief and

only mentioned it once in her reply brief.  *See Access Now, Inc.*, 385 F.3d at 1330; *Sapuppo*, 739 F.3d at 682–83.

## B

Turning to Cromity's hostile-work-environment claim, we hold that the district court did not err in granting summary judgment to Orlando.

Cromity is incorrect that the district court erroneously shifted Orlando's summary-judgment burden to her.  While it is true that Orlando, as the movant, bore the burden "of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believe[d] demonstrate[d] the absence of a genuine issue of material fact," Cromity, who bore ultimate burden of proof at trial, still retained the burden of submitting sufficient evidence to create a genuine issue of material fact as to the essential elements of her claims to survive summary judgment. *See Celotex Corp.*, 477 U.S. at 322–23.  As the movant, Orlando was not required to submit evidence negating Cromity's claims, as she argues, but could simply point to the absence of sufficient evidence on the record supporting her claims to satisfy its summary-judgment burden.  *See id.*  Therefore, the district court's placement of the burden on Cromity to submit sufficient evidence to create a genuine issue of material fact as to the essential elements of her claims was not erroneous.

Further, the district court did not err by concluding that Cromity failed to create a genuine issue of material fact showing that she suffered severe or pervasive harassment on the basis of her

race.  The only evidence that Cromity cites with any possible connection to her race were her supervisor's comments.  But McCrimmon's comments are insufficient to create a reasonable inference of race-based discrimination.  Cromity testified during her deposition that McCrimmon told her that she was a liar, that she "needed to look inside [her]self and see what's wrong," that there was nothing wrong with Cromity's staff because the problem was her, that "[a]nybody can put anything on their resumé" in response to her description of her education and experience, and that she was "aggressive and overbearing."  She also stated that McCrimmon had a "demeanor" and "disdained look" that made her uncomfortable.

Cromity asserted that McCrimmon's comments were based on the stereotypes that "that Black women are flawed" and that "Black women [are] hostile [and] overbearing."  But none of McCrimmon's comments, as described by Cromity, address or even refer to Cromity's race.  While we have held that an express comment that a plaintiff is an "angry Black woman" can be sufficient to create a reasonable inference of racial discrimination, no such comment was made here.  *See Buckley*, 97 F.4th at 796.  Cromity never contended that McCrimmon ever referred to her as an "angry Black woman," only that McCrimmon called her "aggressive and overbearing."  Cromity's argument that McCrimmon's comments were racially charged is based on her own speculation, which is insufficient to create a genuine issue to survive summary judgment. *See id.* at 792.  Likewise, all of the other evidence Cromity cites as showing racial discrimination also improperly relies on speculation because none of it indicates that any actions of any employee of

Orlando against Cromity had anything to do with her race. *See id.* at 796.

Because Cromity has failed to submit sufficient evidence to create a genuine issue of material fact that she suffered severe or pervasive harassment on the basis of her race, the district court did not err by granting summary judgment to Orlando on Cromity's hostile-work-environment claim.

## II

Under Title VII, it is unlawful for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The same is true under the FCRA. *See* Fla. Stat. § 760.10(7).

"A Title VII retaliation claim based on circumstantial evidence . . . is ordinarily analyzed under the . . . burden-shifting framework" stated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021). "Pursuant to that framework, the plaintiff first must establish a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected conduct—that is, conduct protected by Title VII; (2) she suffered an adverse action; and (3) 'there is some causal relationship between the two events.'" *Id.* (quoting *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020)). "The burden then shifts to the employer to articulate a

legitimate, nonretaliatory reason for the adverse action." *Id.* "Assuming the employer's burden is met, 'the burden shifts back to the plaintiff to establish that the reason offered by the [employer] was not the real basis for the decision, but a pretext' for retaliation." *Id.* (alteration in original) (quoting *Johnson*, 948 F.3d at 1325).

When seeking to show that a defendant's reason was pretextual, "[t]he plaintiff cannot recast the reason but must meet it head on and rebut it." *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012) (quotation marks omitted). "The plaintiff must show weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's rationale." *Id.* at 1055–56 (quotation marks omitted). "A reason is not pretext for retaliation unless it is shown *both* that the reason was false, *and* that retaliation was the real reason." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (en banc) (alterations and quotation marks omitted) (emphasis in original). "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010).

"[T]he employee cannot succeed by simply quarreling with the wisdom of [the employer's proffered] reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). "While close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient." *Gogel*,

967 F.3d at 1137 n.15. "[A]n employer's deviation from its own standard procedures may serve as evidence of pretext." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006).

Here, the district court did not err by granting summary judgment to Orlando on Cromity's retaliation claim. Specifically, it did not err by concluding that Cromity failed to submit sufficient evidence to show that Orlando's stated legitimate, nonretaliatory reason for its adverse actions were pretextual.

The record evidence shows that Cromity's supervisor, Billingsley, decided to terminate Cromity because of her treatment of her subordinates, which persisted after she had been placed on a performance-improvement plan due to communication issues. The decision was based on complaints of abusive treatment filed by seven of Cromity's subordinates against her. Those complaints, according to Orlando, were also the reason for Cromity's demotion and suspension after the Grievance Adjustment Board decided that her initial termination was not appropriate, as well as the fact that her old position had been eliminated. With those explanations, Orlando satisfied its burden of proffering legitimate, nonretaliatory reasons for its adverse actions against Cromity. *See Tolar*, 997 F.3d at 1289.

Because Orlando satisfied its burden, the burden shifted back to Cromity to submit evidence showing that Orlando's stated reasons were pretextual. *See id.* But Cromity failed to satisfy that burden because she failed to submit sufficient evidence to show both that Orlando's stated reasons were false and that retaliation was the

real reason for its adverse actions.  *See Gogel*, 967 F.3d at 1136.  All of Cromity's arguments on appeal are based on speculation, and none of her cited evidence can create a reasonable inference that Billingsley made the decisions to terminate or demote her because of her discrimination complaints, let alone that his stated reasons were false.

First, Cromity does not cite to any specific evidence to show that all her subordinates filed their complaints out of racial bias or for personal reasons other than her own speculative judgment that each of the complaining employees had performance deficiencies.  Second, even if it is true that Orlando did not take any action to investigate Cromity's discrimination complaints, that does not suggest that her complaint was the reason for Billingsley's decisions or that the stated reasons for Billingsley's decisions were false.  Third, Cromity's argument that Orlando did not take action against her based on her subordinates' complaints until after McCrimmon became her supervisor does not suggest pretext because it does not address the validity of the complaints against her.

Fourth, the Grievance Board's decision does not indicate that Orlando's reasons for its adverse actions were pretextual.  The Grievance Board found that a number of the complaints cited in the termination memorandum could not be substantiated, but it did find that Cromity had "engaged in abusive behavior on more than one occasion with her subordinates."  It ultimately decided that some discipline was warranted but that instead of terminating Cromity, Orlando "should have applied progressive discipline as

recommended by City Policy." To be sure, evidence that an employer did not follow its own policy could be evidence of pretext. *See Hurlbert*, 439 F.3d at 1299. But even if the Grievance Board's decision indicates that Orlando did not follow its own policies, it does not suggest that Orlando's real reason for its actions was to retaliate against Cromity for her discrimination complaint. "The inquiry into pretext centers on the employer's beliefs," and the fact that the Grievance Board found some of the complaints against Cromity to be unsubstantiated and others to be valid does not indicate that Billingsley believed the complaints to be false or that his true motive in terminating, demoting, and suspending Cromity was retaliation. *Alvarez*, 610 F.3d at 1266.

Lastly, even if it were true that Cromity complained of discrimination in close temporal proximity to her termination, that fact alone does not support pretext. *See Gogel*, 967 F.3d at 1137 n.15.

In sum, Cromity failed to satisfy her burden of showing that Orlando's stated legitimate, nonretaliatory reasons for its adverse actions were pretextual because she failed to show "*both* that [Orlando's] reason[s] [were] false, *and* that retaliation was the real reason," as she was required to do. *See id.* at 1136. All her arguments are improperly speculative, do not meet Orlando's stated reasons head on or rebut them, and merely quarrel with the wisdom of its reasons. We therefore affirm.

★  ★  ★

Because the district court did not err by granting summary judgment to Orlando on Cromity's hostile-work-environment

23-14079                Opinion of the Court                13

claim or by granting summary judgment to Orlando on Cromity's Title VII retaliation claim, we affirm.

**AFFIRMED.**