**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-10584

Non-Argument Calendar

————————————

JUNIOR ORLANDO ANDREW,

*Plaintiff-Appellant,*

*versus*

WASTE PRO OF FLORIDA, INC.,
WASTE PRO USA, INC,

*Defendants-Appellees.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:23-cv-00102-TJC-PRL

————————————

Before LUCK, LAGOA, and ED CARNES, Circuit Judges.

PER CURIAM:

Junior Orlando Andrew, proceeding *pro se*, sued his former employer, asserting Fair Labor Standards Act (FLSA) claims based on failure to pay overtime and retaliation. He also asserted claims of race discrimination, retaliation, and hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 (Title VII).

The court granted summary judgment in favor of the employer on all claims. Andrew challenges that judgment, reiterating the allegations from his complaint and relying on uncorroborated assertions made in his deposition testimony and in his arguments to the district court.  We affirm.

## I.

Waste Pro of Florida, Inc. (Waste Pro) is a waste collection and disposal services company that is divided into divisions, which serve the different regions of Florida.  Waste Pro's Ocala Division hired Junior Andrew in 2018 as a driver, who worked as an at-will employee until 2023.  When Andrew began working for Waste Pro, he was paid a fixed daily rate plus overtime compensation for any hours worked over 40 in a workweek. He started at $140 per day.  And over the course of his employment, he received several pay raises and promotions,[1] and by 2021, he was making $180 per day.   In August of 2021, all Ocala Division drivers (including

---

[1] Andrew had a few work assignment changes over the course of his employment, including becoming a curotto truck driver.  A curotto truck is one with an automated arm to lift garbage cans or dumpsters, and being a driver of one is generally more desirable because it is less physically demanding and pays more due to the required skill and training.

Andrew) were switched to an hourly rate compensation method. Andrew's hourly rate was initially $19.75 but increased to $20.15 by the end of 2022.

Back in 2019, Andrew had joined a lawsuit filed in the United States District Court for the District of South Carolina against multiple Waste Pro entities (including Waste Pro of Florida) involving claims of failure to pay or properly calculate overtime. He was dismissed from that suit,[2] but he alleges that he continued to complain about his lack of overtime compensation. (Waste Pro insists that it never received a complaint from Andrew specifically about lack of overtime compensation or, more generally, that it was otherwise in violation of the FLSA.)

Andrew testified during his deposition that he began noticing safety concerns with his truck after his complaints to management. Starting in 2019, "every time [he] complain[ed]" about his hours "they [would] go and disable [his truck's back-up] camera." He didn't specify who "they" were, but instead used the general terms "they," "employees" or "Waste Pro" every time he discussed the incidents.[3] But he believed he saw a pattern — after he made a

---

[2] Waste Pro of Florida was dismissed from that suit for lack of personal jurisdiction, and its employees were dismissed because they weren't employees of the remaining defendant companies. *See Hansen v. Waste Pro of S.C., Inc.*, No. 2:17-CV-02654, 2020 WL 1892243, at *2 (D.S.C. Apr. 16, 2020).

[3] At times during his deposition, Andrew would mention some names, but he often wouldn't remember the person's last name or the remaining "list" of employees who allegedly sabotaged his truck, stating that he already "explained it" in his paperwork, and the "company already plead[ed] the Fifth for

complaint, he'd see "a habit of mishap[s] to the truck[] [he] was driving." First it was a disabled back-up camera, then he noticed his brakes had been "tampered" with and his hydraulic hose had been cut, objects would be left on the truck's motor (such as an old sponge), and then there were multiple gas leaks. He also testified that Waste Pro had tried to kill him "[b]y cutting [a] line" in his truck so that when he cleaned it, "the blade would go back on [him.]"

While Andrew asserted that Waste Pro does "a lot of evil stuff" and tried to kill him because of his complaints, he also admitted that he had never witnessed anyone sabotaging his truck. He'd simply catch the "mishaps" when he performed his truck's inspections. He also admitted that after he notified someone of a safety concern, it was fixed by him or Waste Pro. And he admitted to having disputes with two different Waste Pro mechanics. One mechanic told him that he was "acting like a bitch" for requesting hydraulics and wanted to fight him. The other mechanic reported Andrew for calling him an "Uncle Tom." Andrew denies calling the mechanic "Uncle Tom" or any other derogatory names.

Finally, after an incident when Andrew refused to drive his truck because he smelled gas, he was instructed to contact Human Resources. When he did so, according to Andrew, HR told him to

---

them." Regardless, he never specifically saw anyone sabotage his truck, and at least once, he had assumed that his supervisor had been the one to disable the truck's back-up camera only because the supervisor was able to fix the camera after Andrew reported it broken.

take the rest of the day off and that the incident would be investigated. The next day on January 6, 2023, Andrew's employment was terminated due to misconduct. According to Waste Pro, it terminated him because he continued to create a "disturbance" in the workplace by accusing management of "being Mafia related," accusing fellow employees of trying to kill him by sabotaging his truck, and insinuating that management had killed another employee.

Andrew sued Waste Pro for failure to pay overtime and retaliation under the FLSA and for race discrimination, retaliation, and a hostile work environment under Title VII.[4] He also included in his complaint[5] and asserted in his deposition testimony allegations that: someone had drawn an inappropriate graphic picture on his personal car; he was denied a $10,000 "safety bonus," which is awarded to drivers who are accident free for three years (a requirement Andrew admitted he did not meet); and Waste Pro in some

---

[4] Andrew filed a charge with the EEOC in May of 2022, alleging race discrimination and retaliation. The EEOC issued a right to sue letter on January 11, 2023, after which Andrew timely filed this lawsuit in the district court. Liberally construing Andrew's pleadings, both Waste Pro and the district court addressed claims that it appeared Andrew intended to raise even if they were unclear or not specified in a separate count. *See generally Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (explaining "a *pro se* complaint [is held] to less stringent standards" and is "construe[d] . . . liberally").

[5] We use the term "complaint" to refer both to Andrew's original and amended complaint, and we read them as one in order to construe his pleadings liberally, just as the district court and Waste Pro did. *See id.*

unspecified way interfered with his daughter's education, causing her to fail the fourth grade.

In addition to those allegations and claims, Andrew testified in his deposition that he thought Waste Pro provided negative references to prospective employers, though he had no evidence of that. He also asserted that after his employment ended, Waste Pro was somehow responsible for a racial slur that he saw written in graffiti near where he walks his dog by a railroad track. But he did not identify, or even speculate, about who associated with the company was responsible for that graffiti.

Waste Pro submitted all of Andrew's paystubs and time-cards, which showed that he had received overtime compensation anytime he worked more than 40 hours in a workweek. It also presented evidence showing that Andrew, who is black, was paid the same as white and Hispanic employees.

Waste Pro moved for summary judgment on all of Andrew's claims. Concluding that no reasonable factfinder could find in favor of Andrew on any of his claims, the district court granted summary judgment in favor of Waste Pro on all of them. Andrew timely appealed.

## II.

We review *de novo* a district court's grant of summary judgment. *Seamon v. Remington Arms Co.*, 813 F.3d 983, 987 (11th Cir. 2016). Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage,

we view the "record in the light most favorable to the [nonmoving] party, and we draw all reasonable inferences" in that party's favor. *Stanley v. City of Sanford*, 83 F.4th 1333, 1337 (11th Cir. 2023). But unsupported "[s]peculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). And a "mere scintilla of evidence" in support of the nonmoving party's position does not suffice either. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quotation marks omitted); *see also Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080–81 (11th Cir. 1990) (discussing how a party's conclusory, uncorroborated allegations do not constitute the necessary "concrete evidence in the form of specific facts" to defeat a well-supported summary judgment motion). "[T]here must be enough of a showing that the jury could reasonably find for [the nonmoving] party." *Allen*, 121 F.3d at 646.

## III.

Andrew contends that Waste Pro violated the FLSA by failing to pay him overtime compensation and that the district court erred in finding there was no genuine issue of material fact about that. Under the FLSA, absent specific circumstances, employees are entitled to overtime compensation of at least one-and-a-half times their regular wage for any hours worked beyond the 40-hour workweek. 29 U.S.C. § 207(a)(1). An employer will be liable for damages for failure to pay overtime in violation of the FLSA if the employee can show that he didn't receive overtime pay where "the employer knew or should have known of the overtime work[ed]." *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801 (11th Cir. 2015); *see* 29 U.S.C. § 216(b).

Despite his allegations that he never received overtime compensation, Andrew's paystubs and timecard records show that he received overtime pay for the hours he worked in excess of the 40-hour workweek.  When shown at his deposition the time records and pay stubs contradicting his allegations, he testified that he thought the Waste Pro secretary had falsified his hours.  But he presented no evidence to back up that thought. Further, the timecards in the record track the times of day that Andrew testified that he generally would clock in and out every day.  Viewing the "record in the light most favorable" to Andrew and "draw[ing] all reasonable inferences" in his favor, *Stanley*, 83 F.4th at 1337, nothing in the record shows a genuine dispute about the hours that Andrew worked or about whether he received overtime pay when required.  The district court correctly granted summary judgment to Waste Pro on the failure-to-pay-overtime claim. *See* Fed. R. Civ. P. 56(a).

## IV.

Construing Andrew's brief liberally, he contends that the district court erred in concluding that he failed to present evidence of a similarly situated comparator and thus failed to establish a prima facie case of race discrimination under Title VII.  Andrew specifically calls our attention to the time in which Waste Pro paid him a daily rate instead of an hourly rate and argues that he has pointed out an employee who was paid more than he was and on an hourly rate instead of a daily rate.

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). When a case of discrimination is supported only by circumstantial evidence, as it is here, we ask "whether a reasonable jury could infer illegal discrimination" from that circumstantial evidence. *McCreight v. AuburnBank*, 117 F.4th 1322, 1335 (11th Cir. 2024).

Using the traditional *McDonnell Douglas* burden-shifting framework to establish a prima facie case of unlawful discrimination, the plaintiff must show that he (1) "belongs to a protected class," (2) "was subjected to an adverse employment action," (3) "was qualified to perform the job in question," and (4) his "employer treated similarly situated employees outside [his] class more favorably." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023) (quotation marks omitted) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). A plaintiff establishes that a similarly situated employee outside of his protected class was treated differently when he presents evidence of a comparator, or someone who is "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1231 (11th Cir. 2019) (en banc). Usually, a similarly situated comparator will have (1) "engaged in the same basic conduct (or misconduct) as the plaintiff"; (2) "been subject to the same employment policy, guideline, or rule as the plaintiff"; (3) "been under the jurisdiction of the same supervisor as the plaintiff"; and (4) shared "the plaintiff's employment or disciplinary history." *Id.* at 1227–28.

Andrew did not present evidence of a similarly situated comparator.[6] He pointed to a Hispanic employee, Carlos Rivera, who Andrew claims was classified as "a commercial driver" and received an hourly rate during the time period that Andrew was paid a daily rate. According to Andrew, he and Rivera drove the same sized truck and should have been classified the same way and received the same pay rate. But that's the *only* similarity that Andrew contends existed. While a plaintiff may not always have to present a valid comparator by showing the two "engaged in the same basic conduct," were "subject[ed] to the same employment polic[ies], guideline[s], or rule[s]," had the same supervisor, and had similar "employment or disciplinary history," *id.*, Andrew had to show more than the fact that he and Rivera both drove big trucks.

Not only that, but Waste Pro offered evidence that Rivera in fact was *not* paid more than Andrew. And it offered evidence that any pay discrepancies between Andrew and other employees were due to experience, not race. Therefore, even if Rivera were similarly situated to Andrew or if some employees of other races received higher pay, Waste Pro provided an offer of justification to off-road Andrew's claim of race discrimination, and he failed to rebut those justifications. *See Chapman v. AI Transp.*, 229 F.3d 1012,

---

[6] Before the district court, Andrew alleged other possible discriminatory actions, but before this Court, Andrew argues only that Waste Pro discriminated against him by paying him a daily rate instead of an hourly rate. Therefore, his other theories of race discrimination are deemed abandoned. *See Sepulveda v. U.S. Atty. Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

25-10584                Opinion of the Court                11

1037 (11th Cir. 2000) (en banc) ("In order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual.").

Andrew also didn't piece together a "convincing mosaic" of allegations supported by evidence from which a reasonable jury could infer that Waste Pro intentionally discriminated against him based on his race. *See McCreight*, 117 F.4th at 1335; *see also Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023) (explaining that a "convincing mosaic" is "a metaphor, not a legal test and not a framework," for the summary judgment standard itself). And we need not waste time in examining Andrew's lack of evidence twice. The district court did not err in concluding that Andrew failed to present sufficient circumstantial evidence to support his claim of race discrimination based on a difference in pay rate.

## V.

Liberally construing his brief, Andrew appears to contend that he presented sufficient evidence for his FLSA-retaliation claim to survive summary judgment.[7]

Under the FLSA, it is unlawful for an employer to "discriminate against any employee because such employee has filed any

---

[7] Andrew does not challenge the grant of summary judgment on his Title VII retaliation claim, only the grant of it on his FLSA-retaliation claim. And on that claim he doesn't contend Waste Pro's termination of him was a retaliatory adverse action but that some of its other conduct was.

complaint." 29 U.S.C. § 215(a)(3). To prove an FLSA-retaliation claim, a plaintiff must show that 1) he "engaged in" an FLSA-protected activity; 2) he "subsequently suffered adverse action by the employer"; and 3) "a causal connection existed between [his] activity and the adverse action." *Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 648 (11th Cir. 2019) (quotation marks omitted). To satisfy the adverse action element, the employee must show that the employer's action was material. *Id.* (relying on *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). And to meet the causation element, "the plaintiff must prove that the adverse action would not have been taken 'but for' the assertion of FLSA rights." *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1343 (11th Cir. 2000)

Andrew reiterates his allegations that his truck was sabotaged in retaliation for his FLSA complaints, but he offers no evidence to show that any of the problems with his truck were casually connected to those complaints. Although he asserts that he recognizes a pattern, he does not share it with us by pointing to dates of his complaints that correlate to the problems with his truck. Nor does he provide any evidence that anyone associated with Waste Pro ever tampered with his truck. Instead, he testified at his deposition that he never witnessed anyone tampering with his truck and that the problems with the truck were fixed when he reported them.

And, apart from his speculation, Andrew failed to tie Waste Pro to the other alleged incidents: the slur graffitied near where he walks his dog and the fact that his daughter did poorly in school.

No reasonable jury could find that his FLSA complaints were the cause of those alleged incidents. *See id.* The district court did not err in granting summary judgment to Waste Pro on them.

## VI.

Andrew's last contention seemingly is that he presented enough factual allegations to establish a claim for hostile work environment based on racial discrimination under Title VII. To establish a hostile-work-environment claim, Andrew needed to have established that he "suffered unwelcome harassment [and] that it was based on a protected characteristic." *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1302 (11th Cir. 2023) (citation omitted); *see id.* at 1304 ("[F]ederal law doesn't prohibit hostility in the workplace — only hostility caused by impermissible discrimination."); *see also Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 836 (11th Cir. 2021) (explaining that hostile-work-environment claims require that the protected characteristic to have been a "motivating factor" in the employment action).

In his brief, Andrew merely recites a list of actions that he alleges occurred, but even if all of them did, he has not presented any evidence that those actions were motivated by his race. Andrew asserts that the employees who vandalized his personal vehicle are white and that the mechanic he had a disagreement with is white. But just because those employees are white does not mean their alleged actions were motivated by race. The remainder of his list is comprised of alleged actions that he has not connected to his

race, and therefore he has failed to show that any harassment was based on a protected characteristic.[8]  The district court did not err.

**AFFIRMED.**[9]

---

[8] Andrew also lists the fact that he didn't receive a safety bonus as evidence of a hostile work environment.  He states for the first time that white employees received this bonus despite also having accidents on their records. But there is no evidence in the record showing whether those white employees had accidents. As we have already explained, Andrew failed to rebut Waste Pro's evidence showing that he was ineligible for the accident-free safety bonus.

[9] Andrew does not argue that the district court erred in granting summary judgment in favor of Waste Pro USA based on its finding that he was never an employee of Waste Pro USA.  It would have done him no good if he had challenged that part of the district court's summary judgment order. *See Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013) (explaining that "employer" under the FLSA means the "employer for whom the employee directly works," "any person acting directly or indirectly in the interests of an employer in relation to an employee," or a "corporate officer with operational control of a corporation's covered enterprise") (quotation marks and citations omitted); *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) ("[R]elief under Title VII is available against only the employer . . . .").